Whenever the lawyers are good. I may please the court I'm John Duesenberry on behalf of the appellant. The district court correctly found that Mr. Saafir did not consent to the search of his vehicle and the court also correctly found that the information on which the search of the vehicle was based was given at a point in time when Mr. Saafir could not have felt that he was free to leave or terminate the encounter with the officer. The court's error that led to its denial of the motion to suppress was first in treating the question of whether or the question of when a lawful police citizen encounter becomes an unconstitutional seizure as essentially a question of duration. That is it only took five minutes therefore it was a de minimis extension irrespective of the content of what occurred during those five to eight minutes when in fact the appropriate analytical parameter is a qualitative assessment. Which had it been undertaken in this case would have led to the conclusion that the statements were in fact the product of an unconstitutional seizure therefore could not have provided probable cause to search and would have resulted in the motion to suppress being granted. The second error that the district court made was in conflating the statements by Mr. Saafir there may be a gun and it may be in the car into there is a gun in the car and it may be under the seat. I'm sorry the initial statement was there may be a gun in the car and it may be under the seat. I think by the time you get there you have a voluntary I mean. You have to make your argument before that you think that it's unreasonable for the police to think that that is gives them reasonable articulable suspicion to go into the car. There may be a gun in the car. Yes, I think I think that that statement comes short of. He had to say there is a gun in the car. You couldn't say there may be. I mean, I look at all those stop and frisk cases seems to me there's a lot less that gives police a reasonable articulable suspicion than somebody saying there may be a gun. My petition, Your Honor, is that saying that there may be a gun and it may be under the seat is what you have. I think it is essentially a negative compounding. That is to say if the standard for probable cause is that that the evidence suggests that it's more likely than not that a crime is committed. I either the police had to have probable cause. I think that's what the district court court found that they had to have probable cause to get into the car. You think the district court found that that's that's my that's my reading of the thing that there's not probable cause. Well, what if all they needed was reasonable articulable suspicion? Well, if that had been the standard and of course, this is a misunderstanding. Why wouldn't that be standard? Because the search of the vehicle would either be can can only be substantiated on on the basis of either probable cause or consent. The district court concluded that Mr. Mr. Sophia did not consent. Therefore, the only other permissible ground on which the search could be upheld would be probable cause. That probable cause can, if it exists at all, has to derive from the statement that he made. The statement that the statements that he made are. So qualified in their nature, so ambiguous in their nature that they do. My contention is that they come short of the standard of probable cause, i.e. more likely than not, that a crime is committed and that evidence of the crime can be found in this location. In other words, had the officer gone to a magistrate to try to get a search warrant for the vehicle and represented that, the only thing that was said, the only evidence of the existence of a firearm is the defendant's statement. There may be a gun in the car and it may be under the seat. My contention would be that that would be an insufficient factual showing that that's not probable. That's my contention. Yes. But of course, the first question is, you don't have any concerns about this stop or anything that the police did up until that point. No, I do have concerns. What maybe you should back up. Well, you kind of skated over your first issue rather quickly and I didn't mean to. No, I was, what I envisioned, what I thought I was doing was providing something of a forecast. These are the two issues. But the first issue, and I think the dispositive issue, is whether the statement, whether the fact that the, whether the district court was correct in concluding that the point in time in which the statement by Mr. Carr represented a de minimis extension of what had begun as a lawful encounter. My contention is that it, to the extent that the court's conclusion that the extension was de minimis, was based solely on the basis of the length of time that it took, that analysis is flawed. And my, I would further contend that the relevant point in time to determine whether or not the extension was reasonable or not, or constitutional or not, was actually before it occurred. Because the facts that inform this issue, I would contend, Your Honors, are the fact that the Corporal Sechrest, by his own testimony, said that his supervisor had given him a directive, that it had become searching or increasing the intensity and the frequency of searches for firearms had become an investigative priority for his unit. I think it's significant that after he did the computer-assisted check and determined the status of Mr. Saphir's license and the other information about him, he called the K-9 unit. The district court found that he called the K-9 unit before returning Mr. Saphir's documents to him. And that, I would submit, suggest that an intention for him to extend the encounter beyond the point in time that one would deem necessary to complete the traffic stop. Once he returned the documents to him, he immediately, that is the amount of time from the record, the length of time from the time the officer returned the documents to Mr. Saphir until the time that the officer began talking about, we've been having problems with robberies and so forth, was... It was the very next thing he did. And he asked him, not only that, he asked him if he could frisk him and did frisk him. Exactly. And I think the district court erred in concluding that there was a period that upon returning Mr. Saphir's documents to him that he should have felt a reasonable person would have felt free to leave. I don't know that a finding regarding that is necessary to resolve the case. Isn't that a legal conclusion? It is a legal conclusion. And in fact, do you agree that the question is not whether your client felt free to leave? The question under the Fourth Amendment is whether a reasonable person in the same or similar circumstances would have felt free to leave. I agree that that's the... Don't you agree that that's the test? Yes. And that's a legal conclusion. It is. And we reviewed that de novo, correct? Correct. Do you agree that the traffic stop actually had come to an end? No. When he returned, well, I don't know if you want to make that answer. Didn't the traffic stop conclude when he handed back the documents? Well, I'm sorry. Your Honor, I see the court's point and I agree. In other words, you seem to have accepted, and I don't mean this critically, the district court's analysis that this was a continuation of the stop. But one could argue, and I thought you were arguing, that this was a new stop because he gave him back his I.D. And the district court said at that point he was free to leave. Mr. Spheer was free to break off the encounter. Yes, that's what the district court said. And we reviewed that de novo. That is correct. And I think the district court was incorrect in reaching that conclusion. I was merely saying I was not accepting the district court's rationale, Your Honor. I was simply saying that even adopting that rationale, the resulting, the facts that led to the eliciting of the statement regarding the gun, that information was elicited at a point in time that the encounter had become an unconstitutional seizure under the Fourth Amendment. But it was all one continuum in your view. In my view, yes. I think it's especially. I thought you were saying to us a little earlier that there were two separate searches. One concluded and then another one began. No. But you're not saying that. I was saying that that was what the district court said. That's what I understand Judge Eagles to have determined, that the traffic stop came to an end when the documents were returned. And Mr. Spheer. In the real world, a reasonable person might not have felt free to leave, but we're operating in the world of precedent. And this is daytime in a residential neighborhood. As I understand, your client had already called somebody to come get him. Yes. All of those are factors that look like we had a conclusion and he was free to leave according to precedent. Right. I understand. And those factors, those factors do cut against my position. And so what cuts for your position that he was not free to leave when he was given back the documents? Well, the fact that apparently immediately upon returning the documents, the officer launched into the speech about violent crimes being a problem in this area. We police officers having been given this directive to heighten our enforcement efforts regarding a fair amount of law that you can have these extraneous discussions. I'm sorry. There is a fair amount of law that you can have these extraneous discussions if they don't go on too long. I mean, that's what you know. Absolutely. But while that is permissible, of course, it is it's a case specific inquiry. Do you have a case where that turns it into an extension of the search? Just all just an extraneous discussion, a short extraneous discussion? Well, no. To answer the question, I cannot cite a case. But the problem with treating the issue of whether the extension is de minimis or not as a purely a function of how much time it took is that I would continue on. The office could very easily say is this. I'm not contending this happened, but they also could very easily hand the credentials back to Mr. Saffir and say, look, I'm going to search your car and I'm going to do it. I've already called the canine unit and we can do it either with your consent or without your consent. But if you don't consent, we're going to wait here for another 25, 30 minutes for the officer, the canine officer to come here. It may take 20 minutes to from the run. I don't think the guy would be free to leave. He would not be free to leave. But my point is that could be conveyed in a matter of less than 60 seconds. But it would nevertheless constitute an impermissible extension, not because of how much time it took, but because of what was said. All right. Well, you have a little time left for rebuttal. Let's hear what the government has to say. Okay? Good morning. May it please the Court. My name is Michael DeFranco and I represent the United States of America in this case. Mr. DeFranco, I'll tell you right off the thing that troubles me most about this case is that the officer lied to the defendant. And are you saying that he lied when he indicated that the flask gave him probable cause to search the car? Yes. Well, respectfully, the officer said that he believed that the flask gave him probable cause. It doesn't make any difference. We're all in the area of objective reality, not your subjective thoughts about something. Isn't that right? Yes. That's the line the government, the Supreme Court sings to us. Admittedly. When I reviewed this case, that was something that bothered me that that came into play at all. Because I viewed this as a case that was your typical consensual encounter after a traffic stop along the lines of Sullivan, Lattimore, and Rusher, that it was a legitimate traffic stop followed by a consensual encounter. And the consensual encounter began when the officer gave Mr. Safir back his identification, told him that, and explained the process. You don't have to appear in court. You're not going to be fined. So certainly from that vantage point, I didn't have a problem when I analyzed the case whatsoever. The fact that he made that statement that the flask gave him probable cause to search the car was problematic or troublesome. It certainly gave me pause. But when you also look at the fact of Mr. Safir exercising his free will, I think it's very significant that he consented to a search of his person, but he felt free enough to repeatedly decline the officer's request to search the car, which shows someone here that's exercising his free will. But are the police officers entitled to lie to get entry? Lie on not a factual matter, but a legal matter? I would say that they're not entitled to lie. But that's what this was. It was objectively untrue. Well, I understand that that's the court's opinion. You've conceded that. No, I have not conceded that he lied. It's objectively an error. It's an error of law. He was in error that the flask gave him probable cause to search the car. I specifically asked him that question, did you believe this to be the case? He did. He was wrong. He was wrong that the flask gave him probable cause to search the car. The district court determined that the flask gave him reasonable suspicion to search the flask, which he didn't do. And certainly that's troubling. Why did he not dispel his concern for what was in the flask? That's certainly a concern. What on earth would be the basis for reasonable suspicion, first of all, reasonable suspicion to justify a search other than a pat-down for a weapon? But what criminal offense would he have been investigating if he had searched the flask? There's an infraction in North Carolina. Called what? Driving with a flask? No, driving with alcohol that's not in its original container. And certainly there's a leap there, that the flask actually contains alcohol. Now, common sense and reason would say if someone's carrying a flask, they're not going to be carrying Coke or something that's legal in a flask. That's commonly used for alcohol. So certainly there's a leap there. And certainly that part of the case is troubling. It could have been empty. I'm sorry? It could have been empty. It could have been empty. And he never took the time to do anything. He did not do anything. And if he had picked it up and could tell from picking it up that it was empty, then he couldn't open it, could he? If he could tell that it was empty, no, he couldn't open it. But he didn't go there because he didn't want to dispel what he believed, he told you he believed, was probable cause. He wanted to search the car, that's obvious. Yeah, no question about it. Why didn't he, first of all, why didn't he arrest the defendant for driving on a revoked license? I asked him the very same question.  Why didn't he arrest the defendant? Because he was under the directive from the police department to ask about weapons and so on and so forth. No, no, no, no, before he ever asked that. Yeah. When he discovered that the license was revoked, he just observed the defendant commit the offense of driving on a revoked license. And then he gave him a warning, or was going to give him a warning. I want to put that police officer on my case. If he could have arrested him and then he could have impounded the vehicle and they could have. Exactly. And you wouldn't be here. I wouldn't. He couldn't. He couldn't have searched the vehicle. Right. This was post-Gantt. No. Right. Didn't this take place post-Gantt in 2009? So he couldn't have searched the vehicle under Belton at the time this occurred, which was post-Gantt. But you're right, he could have impounded the vehicle. Perhaps. He could have. And he didn't do any of that because he wanted to keep the defendant there and engage with him and, as he said in his testimony, talk him into consenting. Right? He did, but he was unsuccessful in talking him into consenting. Despite some fairly coercive attempts. I would not characterize it as coercive. You don't think it's coercive for a police officer with backup to say to a motorist after handing him back his ID and documents, may I pat you down? You don't think that's coercive? No. You interpret it as an exercise of the defendant's free will. You say, well, he said yes to the pat-down, but no to the car search, and you regard that as evidence of the presence of free will. That's a decision by the defendant, who is exercising his free will, saying that I'm not going to do it. You think it's free will. You don't think the defendant was thinking, okay, I'm going to let this guy pat me down, and then maybe he'll just get in his car and drive away. You don't think that was coercive? You think very many people would say, no, you can't pat me down? I think people would say that, no, you can't pat me down. Sure, I do. Okay, can we just for one moment segue back to the misrepresentation? Yes. I take it you're not familiar with Kentucky v. King? No, Your Honor. It's a 2011 Supreme Court case in which the court suggested that if a police officer misrepresented, lied about a legal matter, and that was the basis for a search, that the search would be invalid. And it was there an exigent circumstances search. Here it's not exigent circumstances, but I don't know any reason why it wouldn't fit right into this case. Nobody cited it, and maybe it's not worthwhile talking about it, but maybe you each could file five pages with us within a week telling us what you think of Kentucky v. King. Well... It's 131 Supreme Court, 1849. And I'm not going to prolong you on it unless you have some independent things you would like to talk about. No... The court says threatening to engage in conduct that violates the Fourth Amendment would give you a right to cancel what happened. And that's what I think we have here, a threat to engage in conduct that violates the Fourth Amendment. And I don't view what Officer Sechrist said to Mr. Safier as a lie. It was an incorrect statement. Certainly, in the case of the court... Well, it is a threat to engage in conduct. But if he, in fact, didn't have... If that didn't give him a basis to search the car, looking at the flask, then that was a threat to search the car without a basis. So it's in violation of the Fourth Amendment, right? Well, it's certainly different if it's a lie versus a mistake or an error. Well, I don't think you'll find that distinction in Kentucky v. King. Or in any other case. Other distinctions. Mistakes of law have the same effect. That's what this is. It's a mistake of law. It's not the police misrepresenting. Because we know police can come in, they can question you, and they can say your buddy's giving you up. They can make all kinds of subterfuge to get you to confess or to get you to do incriminating. But what the Supreme Court was drawing the line was, as Judge Davis says, is a mistake in law. If a government tells you something is the law and it is not, and that induces you to give up a constitutional right, then in a 2011 case, the Supreme Court, by Justice Alito, said that would be a problem. So it's not like a fringe old case. Well, the interesting point that that raises is that what right did Mr. Safier give up? Because that statement by the officer did not cause him to consent to a search. He never did consent to the search. Oh, yes. Well, I guess that depends on how you read the facts. What Mr. Safier did was when the officer said, this flask gives me probable cause to search the car, Mr. Safier lowered his head and sighed. And then the officer said, is there anything in the car that you want to tell me about? And that's when the presence of the gun came up. So your view is you can have a preliminary misrepresentation of law that 30 seconds later leads to another question in which there's consent. Is that what your representation is? No, because it's not. Well, that has to be. No, because it was never a consent search. It was a probable cause search based upon Mr. Safier stating that there was a gun in the car. All right. I amend that. 30 seconds later leads to somebody giving up probable cause. You can have this initial misrepresentation of law by the government. And 30 seconds later, in light of that misrepresentation, the defendant gives the officer probable cause. It seems to me that that maybe can't be the law. It's certainly different than giving up a constitutional right. If he said, the flask gives me probable cause to search the car, and then Mr. Safier turned around and said, okay, then I'll let you search the car. That's certainly giving up a constitutional right. But don't you think that that's a fair reading of what happened? Without him saying that, I mean, that was defeated. Mr. Safier had been saying, no, you can't search the car. It's not my car. He's twice refusing search of it. And the cop says, oh, yes, I can. I have a right to search because of the flask. Then he's deflated. Sigh. And then the officer says, well, he sees. The officer sees the sigh, sees him stoop, and says, well, is there something in there that we should know about? I agree, but I think that that is different than if the officer said, now can I search your car? And Mr. Safier said, yes, you can. I mean, Mr. Safier was still within his right. So you think that that situation would be a violation of rights and we should reverse, but that this situation is not? Is that what you're saying? You say they're different. It's, you know, different facts true. And, frankly, I'm not aware of the case that you're on. Right. And if that is the case, a legal misrepresentation by the officer leads to an individual giving up his constitutional rights, then certainly that would fit into the box. What I'm arguing is that our facts don't fit into that box because Mr. Safier never gave up a constitutional right. What he did do was he answered a question that he didn't have to, and he made an admission establishing probable cause. He only did it because he had been misinformed about the law by the police. I think that's a fair statement, that that's what led to it. That's what, yeah. Well, Kentucky v. King isn't right on points, so I'm looking to you all for help. Yes, Your Honor. And then the other issue would be, as the government sees it, is the finding the gun in the glove box. Mr. Safier's statement about the gun in the car was ambiguous. It was a little unclear. Well, he indicated there might be a gun. It might be under the seat. So the government's contention is that that allowed the officer of probable cause to search the vehicle wherever a gun might be found. And certainly if it was a long gun, he wouldn't be allowed to look into the glove compartment. But because it was, his belief was it was a handgun, that he was allowed to look into the glove box. What's the law of North Carolina regarding guns in cars? One can have a carry concealed weapon permit. Is a gun in a car by definition a concealed weapon? Is that how it works? No, I believe that the gun has to be concealed within the car as well. I think there are cases that talk about if an individual is pulled over and puts the gun on the dashboard or something that indicates to the officer that there's a gun there, that that's not a violation. But you can carry a gun in a vehicle, but when you get out of the vehicle, you cannot have it concealed upon your person unless you have a permit. Now, Mr. Safier, being a convicted felon, certainly obviously could not possess a gun. And when the officer did the records check. He knew he was a felon. So any gun in the car in the knowing possession of Mr. Safier would have been probable cause to believe he was in possession of the weapon. Yes. I don't know if the court has any other questions. I guess not. Thank you very much. Thank you. Thank you. Your Honor, I, too, am unaware of. But you're going to find it Kentucky.  Five pages about. Absolutely. But I think it is clear factually that there that there is a but for causal connection between the misrepresentation of the officer and Mr. Safier's subsequent incriminating statement that led to what Judge Eagles found to be probable cause. I would say that this case represents, I believe, a law enforcement response. Training response to this court's holdings in cases like Russia, D.G. Avani, beyond Ortiz and others to the extent that it's offices are apparently instructed being instructed to hasten the point in the encounter at which the encounter becomes consensual. Because so many cases have highlighted the return of the driver's license and identification document as a point in time at which the traffic stop, the nonconsensual, the lawful nonconsensual encounter ends. From that point forward, it really becomes a credibility contest, a credibility contest between a law enforcement officer and oftentimes a convicted felon. If that's so, the district court determines. I'm sorry, Your Honor. If that is the case, the district court is going to be determining it. If it's always. Absolutely. And I only mention that because I think that highlights the danger in treating the, again, the whether an extension of an encounter is de minimis or not as solely a one-dimensional inquiry. You remember when Judge Davis was questioning the other side and he brought up, as I remember the facts, there's enough to arrest this man. Yes, ma'am. So that's what makes this a little complicated. And I'm not sure it jives with your theory because if there was enough evidence to arrest him, that would get them the gun ultimately. Right? It would. It would. And I would not presume to be able to enlighten the court as to that. If my years in doing this work has taught me anything, it's that. You don't argue the other side's case. Certainly not. And that we sometimes deceive ourselves when we look for logic where it sometimes doesn't exist. And if the court has any other questions, I'll be happy to try to entertain them. All right. Thank you. All right. Thank you very much.
judges: Diana Gribbon Motz, Andre M. Davis, Stephanie D. Thacker